IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAABIYL MIMS | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 18-CV-1185 |
| NEW AGE PROTECTION, INC. | : | |
| and | : | |
| TAMISHA THOROGOOD | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                        **NOVEMBER 5, 2018**

Before the Court are Plaintiff's Complaint (Doc. No. 1), Defendant's Motion to Dismiss (Doc. No. 5), Plaintiff's Motion for Leave to File the Amended Complaint Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure (Doc. No. 10), and Defendants' Opposition thereto (Doc. No. 11). For the reasons outlined herein, the Court hereby GRANTS IN PART Plaintiff's Motion to File an Amended Complaint and GRANTS IN PART Defendant's Motion to Dismiss.

**I. BACKGROUND**

On March 20, 2018, Plaintiff Haabiyl Mims filed a Complaint (Doc. No. 1) alleging retaliatory discharge under the Fair Labor Standards Act of 1938 (FLSA §15 (a)(3)), Defamation and

1

Defamation Per Se, and Wrongful Termination by Defendants New Age Protection Inc. and Tamisha Thorogood. On July 27, 2018, Defendants moved to dismiss each of these allegations. (Doc. No. 5). On September 7, 2018, Plaintiff responded to Defendants' motion to dismiss and withdrew their Wrongful Termination claim. (Doc. No. 8). On October 2, 2018, Plaintiff moved this Court for leave to file a proposed Amended Complaint, which they attached to their motion. (Doc. No. 10). Defendants ask us to deny Plaintiff's motion on the grounds that amendment would be futile. (Doc. No. 11).

In October, 2012, Plaintiff Mims began working for Defendant New Age Protection, Inc. ("New Age"), a security corporation providing services to federal, state and local governments and contractors, (Amend. Compl. ¶6, Doc. No. 10, Ex. A), as an Access Controller ("ACP"), where his duties "entailed scrutinizing and checking the ID tags and badges of people entering and exiting secured areas." Id. at ¶10.[1] In or about December 2015, the United States Department of Labor ("DOL") investigated Defendant New Age for violation of the Fair Labor Standards Act of 1938 ("FLSA") and its Wage and Hour regulations regarding questionable billing practices and compensation of

---

[1] Unless otherwise noted, the following facts are taken from Plaintiff's Proposed Amended Complaint, Doc. No. 10, Ex. A.

employees.  Id. at ¶11.  "Plaintiff Mims was a complainant along with other employees who gave evidence to the [DOL] against Defendant New Age regarding, *inter alia*, the hours they worked and for which they were not paid."  Id. at ¶12.  New Age was eventually found to have violated the FLSA Wage and Hour regulations and subsequently compensated Plaintiff $16,700.00 in back wages they owed him.  Id. at ¶14.

While the DOL investigation was pending, New Age promoted Plaintiff to overnight Supervisor.  Id. at ¶15.  One month later, two weeks after the investigation concluded, New Age again promoted Plaintiff, this time to Project Manager.  Id. at ¶16.

Eight months later, on March 17, 2017, New Age terminated Plaintiff's employment.  Id. at ¶20.  Defendant Tamisha Thorogood, Human Resources Manager for Defendant New Age, told Plaintiff by telephone that "New Age was terminating his employment because he had falsified timesheets to obtain payment for hours he had not worked and that he created a hostile work environment."  Id. at ¶20.  Three days later, on March 20, 2017, Thorogood sent an email to "all employees of New Age," id. at ¶21, stating,

> As you may already be aware, Haabiyl Mims is no longer with New Age Protection, Inc. Please refer to Stephanie Martinez for any New Age business as she is will be you [sic] Site

Supervisor.  Also, any hostility or insubordination will not be tolerated.  Please remember that you are all there to do a job and that we require everyone to remain professional at all times. Be aware that falsifying timesheets and causing a hostile work environment are grounds for termination. Thank you.

Id., Ex. B. at 29-32.

Plaintiff's proposed Amended Complaint alleges that Defendants violated the Anti-Retaliation Provision of the Fair Labor Standards Act, 29 U.S.C. §216(a)(3) because Defendant Thorogood was aware that Plaintiff had participated in the DOL investigation, Plaintiff's participation in the investigation was the cause for his termination, and Thorogood's email to other New Age employees was aimed to dissuade them from reporting FLSA violations to the DOL, the courts, and their employer.  (Doc. No. 10 at 10).  Plaintiff also alleges that Thorogood's email violates Pennsylvania's defamation statute because it harmed Plaintiff's reputation by imputing to him an accusation of timesheet falsification, and because Thorogood allegedly sent the email maliciously, with knowledge that the implied accusation was false, and without a conditional privilege to share the information with "all New Age employees." ¶¶23-29.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 15 (a)(2) "a party may amend its pleading only with the opposing party's written

consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15 (2). The district court has discretion to grant a party leave to amend. Del Sontro v. Cendant Corp., 223 F. Supp. 2d 563, 576 (D.N.J. 2002) (citing Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984)). Yet, a court may deny leave to amend where there is "undue delay, bad faith or dilatory motive, undue prejudice to the opposing party or futility of amendment." Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988) (citing Foman v. Davis, 371 U.S. 178, 83 (1962)). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Burlington Coat Factory Litigation, 114 F.3d 1410, 1434 (3d Cir. 1997) (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)) (citing 3 Moore's Federal Practice P 15.08[4], at 15-80 (2d ed. 1993))). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." Id. (citing Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983)).

"The standard of legal sufficiency set forth in Fed. R. Civ. P. 12(b)(6) determines whether a proposed amendment would be futile." Anderson v. City of Phila., 65 F. App'x 800 (3d

5

Cir. 2003) (citing In re Burlington Coat Factory Litigation, 114 F.3d 1410, 1434 (3d Cir. 1997)). "To survive a Rule 12 (b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). . . . '[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts' (citing Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)). Lee v. City of Phila., No. 13-510, 2014 WL 12616820, at *3 (E.D. Pa. Sept. 24, 2014). We assess whether Plaintiff's claims could "survive a Rule 12(b)(6) motion even if pled with more particularity." In re Burlington Coat Factory Litigation, 114 F.3d at 1435.

**III. DISCUSSION**

*A. Retaliation under the FLSA*

The Fair Labor Standards Act makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding. . . ." 29 U.S.C. §215 (a)(3). "In order to succeed on such a retaliatory discharge claim, [Plaintiff employee] must prove the same elements that would be required

6

under a Title VII claim. Strickland v. MICA Information Systems, 800 F. Supp. 1320, 1323 (M.D.N.C. 1992) (citing Brock v. Richardson, 812 F.2d 121, 123 (3d Cir. 1987)." Hashop v. Rockwell Space Operations Co., 867 F. Supp. 1287, 1299 (S.D. Tex. 1994). To establish a prima facie case of retaliation under the FLSA, an employee must show that "(1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and the employer's adverse action." Scholly v. JMK Plastering, Inc., No. 07-4998, 2008 WL 2579729, at *3 (E.D. Pa. June 25, 2008) (citing Preobrazhenskaya v. Mercy Hall Infirmary, 2003 U.S.App. LEXIS 16347 at *6-7, 2003 WL 21877711 (3d Cir. July 30, 2003) (citation omitted)).

An employee engages in protected activity when they have "filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). The Supreme Court has held that an oral complaint can constitute protected activity. However, the employer must have notice that the employee engaged in protected activity. "It is only intuitive that for protected conduct to

7

be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002).

Plaintiff's proposed Amended Complaint alleges that Plaintiff "Mims was a complainant. . .who gave evidence to the [DOL] against Defendant New Age regarding, *inter alia*, the hours they worked and for which they were not paid," (Amend. Compl. ¶12, Doc. No. 10, Ex. A), and that Defendant compensated Plaintiff for back wages by repaying him $16,700 "based on the [DOL] investigation." Id. at ¶14. The proposed Amended Complaint goes on to argue that Defendant Thorogood knew that the DOL was investigating Defendant's billing and compensation practices, because her job duties included collecting employee compensation-related data. Id. at ¶11. However, these facts do not show that Thorogood or New Age knew that Plaintiff complained to the DOL.

Thorogood's knowledge that the DOL was investigating does not mean that she knew which, if any, employees participated. As Defendant argues, these facts "show[] only that the DOL sought timesheets for New Ages' employees, including [Plaintiff]." (Doc. No. 11 at 8). Yet, this does not establish that Defendant knew Plaintiff engaged in "protected activity" by participating in the investigation.

8

This case is unlike Barnello v. AGC Chemicals, where the employer clearly knew of Plaintiff's protected activity because Plaintiff complained to his supervisors, not to an external agency. In Barnello, the District Court held the Plaintiff employee "sufficiently allege[d] that [his] termination violated the FLSA's discrimination and retaliatory provision" because it Plaintiff "engaged in a protected activity by making several informal complaints to his supervisors. . .about [employer's] refusal to pay him overtime for time spent relieving other employees and donning special required clothing." Barnello v. AGC Chemicals, 2009 WL 234142, at *6 (D. N.J. 2009). Here, by contrast, Plaintiff has failed to allege that he complained to his supervisors about their failure to compensate him, or particular facts showing that Defendant knew Plaintiff complained to the DOL.

"To survive [an employer's] motion to dismiss, [Plaintiff is] required to plead facts that would plausibly support an inference that there was a causal connection between [Plaintiff's] prior employment complaints and [the adverse employment action]." Bishop v. United States Dep't of Agric., 725 F. App'x 165, 168 (3d Cir. 2018). Where a plaintiff fails to plausibly allege that the employer "had knowledge of his prior protected activity," the employee fails "to plead the

9

requisite causal connection between his participation in the protected activity and the adverse employment action." Id. at 167-8.

Although we find insufficient facts to establish Defendants knew Plaintiff participated in the DOL investigation, even if the facts were sufficient to show employer's knowledge, we find that the eight-month gap between Plaintiff's protected activity and Defendant's termination does not establish the requisite causal connection to make out a retaliation claim.

"The timing of the alleged action must be unusually suggestive of retaliatory motive before a causal link will be inferred." Shellenberger v. Summit Bancorp, 318 F.3d 183, 189 n.9 (3d Cir. 2003) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)). The Third Circuit has found that "two days between the protected activity engaged in and the alleged retaliation sufficed. . .to support an inference of a causal connection between the two." Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)). By contrast, the Third Circuit in Williams v. Phila. Hous. Auth. Police Dep't found a gap of "over two months" between an employee's complaint and the adverse employment action failed to suggest a retaliatory motive for termination. Williams, 380 F.3d 751, 760 (3d Cir. 2004). The "mere fact that adverse employment action occurs after a

complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the [employee's protected activity and the employer's adverse employment action]." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997), overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405 (2006).

Courts do consider "other evidence" of causal connection, in cases where temporal proximity alone "is not so close as to be unduly suggestive." Estate of Smith v. Marasco, 318 F.3d 497, 513 (3d Cir. 2003). This includes, but is not limited to, an intervening "pattern of antagonism." Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). However, here, as in Williams, Plaintiff Mims has failed to "put forth. . .other evidence suggesting that [New Age] terminated him because he [participated in the DOL investigation]." 380 F.3d at 761.

Short timing between the employee's complaint and the adverse employment action was key in Barnello, where shortly after the employee voiced concerns about Defendant's "refusal to pay him overtime" his supervisor "began following [plaintiff], allegedly watching his every move." Barnello, 2009 WL 234142, at *6. Plaintiff was fired shortly thereafter based on the "manner in which he pulled the gas from the autoclave after an

11

aborted batch. Other [company] employees engaged in similar behavior without retribution, establishing a causal connection between Sakowski's informal statements and his firing." Id. By contrast, Plaintiff Mims was promoted twice after participating in the DOL investigation, first in June 2016, while the investigation was pending and again approximately two weeks after the investigation concluded. (Amend. Compl. ¶¶15-16, Doc. No. 10, Ex. A). It was not until eight months later, on March 17 2017, that Thorogood called Plaintiff Mims to inform him that Defendant was terminating him "because he had falsified timesheets to obtain payment for hours he had not worked and that he created a hostile work environment." Id. at ¶20.

Therefore, as in Bishop, where the Third Circuit upheld the District Court's decision to deny a Plaintiff employee leave to amend his complaint alleging retaliation under the FLSA because his allegations "lack[ed] the requisite degree of specificity," Bishop v. United States Dep't of Agric., 725 F. App'x 165, 168 (3d Cir. 2018), here, Plaintiff has not pleaded facts establishing the first element of a prima facie retaliation claim under the FLSA, that New Age or its agent Thorogood were on notice that Plaintiff Mims engaged in protected activity by participating in the DOL investigation into Defendant, and where eight months passed between Plaintiff's "protected activity" and

12

Defendant's adverse employment action (interrupted only by Defendant promoting Plaintiff twice).

In absence of a closer temporal connection between Plaintiff's termination and his participation in the DOL investigation (the protected activity), Plaintiff would have to establish a "pattern of antagonism" in order to make out a prima facie retaliation claim. In Robinson, although time had passed between the employee's complaint and the adverse employment action by the employer, the Third Circuit found the plaintiff's evidence that Defendant had "subjected [Plaintiff] to a pattern of harassment during that time period" was enough to satisfy the causal connection required for establishing a prima facie case of retaliation. Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997) (citing Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892 (3d Cir. 1993)). Yet, Plaintiff fails to do so here for two reasons.

First, the allegation that Thorogood once "overrode" Plaintiff's decision to remove an employee from his security post, (Amend. Compl. ¶18, Doc. No. 10, Ex. A), does not establish a pattern, nor antagonism. The facts show this was an isolated incident and within Thorogood's job responsibilities to make such a decision. Although the termination occurred later on the same day as Thorogood decided to override Plaintiff's

removal of another ACP, id. at ¶¶19-20, that temporal proximity does not establish a causal connection between the protected activity and Plaintiff's termination.  Second, Defendant promoted Plaintiff twice, once during the DOL investigation and again two weeks after the investigation concluded.  Id. at ¶¶ 16-17.

Without facts to establish a prima facie retaliation claim under the FLSA, we deny Plaintiff's motion to amend their complaint regarding retaliation, and we grant Defendant's motion to dismiss Plaintiff's retaliation claim.

### *B. Defamation*

To succeed on a claim for defamation under Pennsylvania law, a plaintiff must establish: "(1) The defamatory character of the communication. (2) Its publication by the defendant. (3) Its application to the plaintiff. (4) The understanding by the recipient of its defamatory meaning. (5) The understanding by the recipient of it as intended to be applied to the plaintiff." Tucker v. Fischbein, 237 F.3d 275, 281 (3d Cir. 2001) (quoting 42 Pa. Const. Stat. Ann. § 8343(a)).  "A statement is defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from association or dealing with him.'" Graboff v. Colleran Firm, 744 F.3d 128, 136 (3d Cir. 2014)

(quoting Thomas Merton Ctr. v. Rockwell Int'l Corp., 442 A.2d 213, 281-82 (1981)). The statement "must provoke 'the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'" Id. (quoting Scott-Taylor, Inc. v. Stokes, 229 A.2d 733, 734 (Pa. 1967)). Although a defendant can avoid defamation liability by showing its statements were "substantially true," a defendant may be found liable for defamation "where a statement, viewed in context, creates a false implication." Id. (citing Dunlap v. Phila. Newspapers, Inc., 448 A.2d 6, 15 (Pa. Super. Ct. 1982)).

To determine if a statement meets the first element of a defamation claim, and "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him" (Smith v. IMG Worldwide, Inc., 437 F. Supp. 2d 297 (E.D. Pa. 2006) (quoting Cosgrove Studio & Camera Shop, Inc. v. Pane, 182 A.2d 751, 753 (Pa. 1962)), we must "'evaluate "the effect [the statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate."'" Id. (quoting Tucker 237 F.3d at 282 (quoting Corabi v. Curtis Pub. Co., 273 A.2d 899 (1971))). If a court determines "that a statement can support [a defamatory meaning], the jury then must decide 'whether the

15

recipient actually understood the statement to be defamatory.'" Graboff v. Colleran Firm, 744 F.3d 128 (3d Cir. 2014) (quoting Thomas Merton Ctr. v. Rockwell Int'l Corp., 442 A.2d 213, 281-82 (1981)). Plaintiff alleges that Thorogood's email harmed Plaintiff's reputation, since "New Age employees and other members of the security guard community" who read the email "understood the statements as accusing [Plaintiff] of having engaged in criminal activity," and that the email "imputed to him criminal and/or improper conduct punishable by either imprisonment or judicial sanction." (Amend. Compl., Ex. A. ¶¶25,40). Thus, these allegations establish the first, fourth, and fifth elements of a defamation claim at the motion to dismiss stage. The other elements are met because the email was sent ("published") by Defendant's agent, Thorogood; and the email refers to Plaintiff by his full name, therefore it applies to the Plaintiff.

Defendant's argument that the email was "blind copied" by Thorogood to "employees who [Plaintiff] Mims supervised" (Doc. No. 11 at 14) is not appropriate on a motion to dismiss, and would be appropriately pled in an Answer. At this stage, we accept as true Plaintiff's allegations that Defendant, through Thorogood's email, "notified all employees of New Age, via the internet, that Plaintiff Mims had been terminated. . . ."

16

(Amend. Compl., Ex. A. at ¶21). We therefore grant Plaintiff leave to amend their complaint regarding their defamation claim.

Defendant raises an affirmative defense that Thorogood had a conditional privilege to send the email to employees who had a "common interest in knowing that (1) Mr. Mims did not work for New Age anymore; and (2) that another supervisor would act as the Site Supervisor going forward." (Doc. No. 11 at 13). "A complaint may be dismissed under Rule 12(b)(6) when the allegations indicate the existence of an affirmative defense, but the defense must clearly appear on the face of the pleading." Johnson v. Res. for Human Dev., 860 F. Supp. 218, 221 (E.D. Pa. 1994). "[A]n affirmative defense will not generally support a Rule 12(b)(6) motion to dismiss." Id. Here, a conditional privilege does not "clearly appear on the face of the pleading," id. since Defendant's motion merely contradicts Plaintiff's allegations about the scope of the emails' recipients. More factual development will help establish whether Defendant was conditionally privileged to communicate Mims had been terminated based on whether "the information [was] disseminated beyond the circle of those who reasonably need[ed] to know the reason for the employee's dismissal." Momah v. Albert Einstein Med. Ctr., 978 F. Supp. 621, 635 (E.D. Pa. 1997)(internal citations omitted). At the

motion to dismiss stage, accepting as true Plaintiff's allegations that the email was sent to all New Age employees and implied knowingly false accusations against him that subjected him "to shame and ridicule," (Amend. Compl., Ex. A. at ¶21), we grant Plaintiff leave to amend their complaint regarding their defamation claim.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiff Mims's Motion for Leave to File the Amended Complaint regarding Count II, (Doc. No. 10), alleging defamation. Additionally, based on the lack of factual support discussed herein, we dismiss with prejudice Count III of the Complaint, (Doc. No. 1), alleging retaliation under the FLSA. An appropriate order will follow.